Douglas H. Morseburg (SBN 126205)
dmorseburg@leechtishman.com
Esther J. Choe (SBN 321667)
echoe@leechtishman.com
**LEECH TISHMAN FUSCALDO & LAMPL**
200 South Los Robles, Suite 300
Pasadena California 91101
Telephone:  (626) 796-4000
Facsimile:   (626) 795-6321

Attorneys for Plaintiff
Line One Laboratories Inc. (USA)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Line One Laboratories Inc. (USA), a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Wingpow International Limited, a private limited company organized in the United Kingdom; Gary Ayckbourn, an individual; Mark James Ayckbourn, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-02401<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF CONTRACT;**<br>2) **GOODS SOLD AND DELIVERED;**<br>3) **ACCOUNT STATED; AND**<br>4) **NEGLIGENT MISREPRESENTATION**<br><br>**REQUEST FOR JURY TRIAL** |

Plaintiff Line One Laboratories, Inc. (USA), through its attorneys, Leech Tishman Fuscaldo & Lampl, alleges:

## THE PARTIES

1. At all times relevant, Line One Laboratories Inc. (USA) ("Plaintiff" or "LOL") was, and it is, a California corporation having its principal place of business in Chatsworth, in the County of Los Angeles, California.

2. LOL is informed and it believes that at all times relevant herein defendant Wingpow International Limited ("WPIL") was, and it is, a private limited company organized under the laws of the United Kingdom with its principal place of business in Reading, in the United Kingdom.

3. LOL is informed and it believes, and based thereon alleges, that defendant Gary Ayckbourn is a British citizen domiciled in, and having a principal place of business, in Reading, in the United Kingdom.

4. LOL is informed and it believes, and based thereon alleges, that defendant Mark James Ayckbourn is a British citizen domiciled in, and having a principal place of business in Reading, in the United Kingdom.

5. The defendants named herein as Does 1 through 10, inclusive, are persons whose names are currently unknown to LOL. LOL will amend this complaint to provide their names when the same become fully ascertained. On information and belief, none of the defendants named a Does 1 through 10 is domiciled in, resides in, is incorporated in or has a principal place of business in, the State of California.

6. LOL is informed and it believes that, at all times relevant herein, Gary Ayckbourn was, and he is, the secretary and the managing director of WPIL and that he directed the activities of the defendants in doing the things complained of below.

7. LOL is informed and it believes that, at all times relevant herein, Mark

1  James Ayckbourn was, and he is, a director and the sales director of WPIL and that
2  he directed the activities of the defendants in doing the things complained of below.

3        8.      LOL and WPIL have maintained a years-long business relationship.
4  Based upon that relationship, LOL is informed and it believes, that defendants Gary
5  Ayckbourn, and Mark James Ayckbourn (collectively, "Ayckbourns") are principals
6  of WPIL and, at all times relevant, each was, and is, an owner of a substantial
7  interest in WPIL. Based upon its relationship with WPIL, LOL is informed and it
8  believes that the Ayckbourns manage and oversee the day-to-day operations of WPIL
9  and that they jointly make business decisions on behalf of WPIL.

10        9.      LOL is informed and it believes that the defendants named herein as
11  Does 1 through 10, inclusive, also actively participated in, and/or directed, the
12  actions of WPIL complained of below.

13        10.     On information and belief, at all times relevant, there has existed a unity
14  of interest and ownership between the Ayckbourns and Does 1 through 10, inclusive,
15  on the one hand, and WPIL, on the other, such that any individuality and
16  separateness between these persons, on the one hand, and WPIL on the other, has
17  ceased.

18        11.     On information and belief, WPIL is the mere alter ego of the
19  Ayckbourns and Does 1 through 10, which persons have completely controlled,
20  dominated, managed and operated WPIL and intermingled the assets of WPIL with
21  their own assets to suit their own convenience. On further information and belief, the
22  Ayckbourns and Does 1 through 10 have used the assets of WPIL for their own
23  personal use, have caused the assets of WPIL to be used to pay their debts, have
24  caused the assets of WPIL to be transferred to them without adequate consideration,
25  and have withdrawn funds from the bank accounts of WPIL for their personal use.

26        12.     Adherence to the fiction of the separate existence of WPIL as an entity
27  distinct from the Ayckbourns and Does 1 through 10 would permit abuse of the
28

-2-
COMPLAINT FOR BREACH OF CONTRACT, ETC.

corporate privilege and would sanction a fraud in that, on information and belief, Ayckbourns and Does 1 through 10 have caused substantial sums to be to be withdrawn from WPIL's accounts and distributed to themselves and various third parties for the purpose of avoiding and preventing attachment and execution by creditors.

13. LOL is informed and believes, and on that basis alleges, that at all times herein mentioned, all defendants herein, whether named or fictitiously designated, were the agents, servants, employees, joint venturers, and/or the alter egos of each of the remaining defendants, and that the acts of each defendant were performed within the course and scope of their agency, service and employment and were undertaken with the permission, consent, and/or ratification of each other defendant. From this point forward, defendants WPIL, Ayckbourns and Does 1-10 shall be referred to collectively as "Defendants".

## JURISDICTION & VENUE

14. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that this is an action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and a complete diversity of citizenship exists between the Plaintiff LOL, a California corporation and each Defendant which is a citizen of, domiciled in, incorporated in, and having a principal place of business in a foreign state.

15. This Court has personal jurisdiction over the Defendant WPIL because WPIL has sustained a business relationship with LOL for more than a decade and it has made payments to LOL, which is located in California, on hundreds of contracts in the form of purchase orders and invoices and has distributed millions of dollars' worth of products manufactured by LOL throughout the U.S. and California.

16. This Court has personal jurisdiction over the Ayckbourns, as principals

-3-
COMPLAINT FOR BREACH OF CONTRACT, ETC.

of WPIL, they were the key players in building WPIL's years-long business relationship with LOL, they have regularly visited LOL's principal in California, and they have distributed the products manufactured by or for LOL to businesses throughout the U.S., including California. In addition, the during the course of their relationship with LOL, and in furtherance of that relationship, the Ayckbourns and the remaining defendants have regularly made contact with such businesses in the U.S. and California by email and phone.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3) because a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred here and because the actions of the Defendants, as detailed below, are causing damage here.

## BACKGROUND FACTS

18. LOL is an original equipment manufacturer ("OEM") of adult toys for other businesses who market such products under their respective brands.

19. LOL's factory, located in China, produces OEM products made to customers' specifications bearing private labels.

20. Defendants distribute LOL's OEM products. Pursuant to the manufacturer/distributor relationship between LOL and Defendants, customers issue purchase orders to Defendants for LOL's OEM products. Defendants, in turn, pass those purchase orders to LOL's Chinese factory for processing and fulfillment. LOL's Chinese factory then manufactures the relevant products and ships them directly to the locations specified in the purchase orders.

21. At or about the time the products specified in each purchase order are ready for shipment, LOL's Chinese factory generates an invoice, copies of which are sent to LOL and Defendants. Defendants, in turn, issue an invoice to the customer for the price specified in the purchase order, while LOL issues an invoice to Defendants

for an amount according to a previously agreed upon formula. Once they receive the goods specified in the purchase orders, the customers pay Defendants which, in turn, are supposed to pay LOL.

22. Within the last two years, due to the effect of the Covid-19 pandemic on its business, LOL made plans to reduce the size of the workforce at, and the production of goods at, the factory in China. Upon learning of LOL's plan to reduce the factory's workforce and production, Defendants asked LOL not to reduce the workforce or the production. As an inducement to LOL to maintain the factory's then-current operations, Defendants represented that they would pay the marginal cost of maintaining the factory's then-current operations. LOL and Defendants agreed to this arrangement and, in reliance upon Defendants' representations, LOL did in fact maintain its then-current operations, thereby incurring substantial expenses that it would not have incurred but for the parties' agreement.

## FIRST CAUSE OF ACTION

(Against All Defendants for Breach of Contract)

23. LOL incorporates by reference into this paragraph each and every allegation contained in paragraphs 1 through 22, above.

24. Pursuant to the business relationship described above, during the period between January 2006 and December 2022, LOL and Defendants maintained a business relationship pursuant to which the parties agreed, among other things, that LOL would (a) manufacture goods for customers on an OEM basis pursuant to purchase orders submitted to LOL by Defendants, (b) ship those goods to the customers, and (c) issue invoices to Defendants for those goods according to an agreed-upon formula. As part of that relationship, Defendants agreed, among other things, to pay LOL's invoices within a specific period of time.

25. LOL has performed all of its agreed-upon obligations under the above

arrangement. However, within the last two years, Defendants have breached the parties' agreement by, among other things, failing to make payments for goods shipped by LOL when they were due. In addition, although LOL has abided by its agreement with Defendants to maintain the operations of the factory at pre-pandemic levels, Defendants have breached that agreement by failing, and refusing, to pay the marginal costs incurred by LOL in maintaining the factory's operations.

26. As a consequence of Defendants' breaches of their agreements with LOL, there is currently due and owing by Defendants to LOL the amount of at least $1,615,577.68. Of this amount, the sum of approximately $825,685.71 represents the costs of maintaining the operations of the Chinese factory at pre-pandemic levels.

27. In addition to the foregoing, LOL has manufactured goods pursuant to additional customer purchase orders submitted to Defendants and it purchased parts and materials to fill other purchase orders previously submitted to it by Defendants. In view of the Defendants failure to pay LOL's invoices and the cost of maintaining the operations at the factory, as detailed above, LOL has asked the Defendants to provide reasonable assurances they will comply with their contractual obligations by making some advance payments for the incoming purchase orders. However, the Defendants have refused to do so without "a clear understanding/agreement with [LOL] on future business."

28. In view of the Defendants' non-payment and their refusal to provide reasonable assurances of payment on future invoices, LOL has not been able to ship the OEM products that have been made under OEM customers' private labels. LOL is not able to resell these products to other businesses since such OEM products bear the private labels of the customers for whom they were manufactured. The total amount of losses to LOL associated with unshipped OEM products is presently unascertained but will be proven at trial.

29. By reason of Defendants' acts, as alleged above, LOL has suffered other

damage to its business, reputation and goodwill for its inability to meet its customers' demands, the loss of profits and sales it would have made but for Defendants' conduct in an amount that is presently unascertained but which will be proven at trial.

## SECOND CAUSE OF ACTION
(Against All Defendants for Goods Sold and Delivered)

30. LOL incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-29, above.

31. LOL has delivered, through its factory in China, the goods referenced in the purchase orders that Defendants have submitted that are subject of the unpaid invoices.

32. By reason of the foregoing, there is presently due and owing to LOL by the Defendants for goods LOL delivered to the OEM customers pursuant to the purchase orders that Defendant submitted a sum which is presently unascertained, but which will be proven at trial, together with interest thereon at the legal rate from and after April 1, 2022.

## THIRD CAUSE OF ACTION
(Against All Defendants for Negligent Misrepresentation)

33. LOL incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-32.

34. The representations by the Defendants described above regarding the payment of the costs of maintain the operations of the factory in China were made without any grounds for believing them to be true.

## PRAYER FOR RELIEF

WHEREFORE, LOL prays:

### ON THE FIRST CAUSE OF ACTION

1. For damages for breach of contract in the amount of at least $1,615,577.68;
2. For further damage to LOL in an amount to be proven at trial;
3. For interest at the maximum legal rate from and after April 1, 2022;

### ON THE SECOND CAUSE OF ACTION

4. For damages for goods sold and delivered in the amount to be proven at trial;
5. For interest at the maximum legal rate from and after April 1, 2022;

### ON THE THIRD CAUSE OF ACTION

6. For damages in the amount of at least $825,685.71;
7. For interest at the maximum legal rate from and after April 1, 2022

### ON ALL CAUSES OF ACTION

8. For costs of suit herein; and
9. For such other and further relief as the court may deem just and proper.

Dated: April 8, 2022

LEECH TISHMAN FUSCALDO & LAMPL

By: _/s/Douglas H. Morseburg_____
       Douglas H. Morseburg

Attorneys for Plaintiff One Line Laboratories Inc. (USA)

## REQUEST FOR JURY TRIAL

Fable requests a trial by jury of all issues that are properly tried to a jury.

Dated: April 8, 2022

LEECH TISHMAN FUSCALDO & LAMPL

By: _/s/Douglas H. Morseburg_____
    Douglas H. Morseburg

Attorneys for Plaintiff Line One Laboratories Inc. (USA)