DAVID M. PERNINI (admitted *pro hac vice*)
dpernini@wfslaw.com
JEFFREY N. WILLIAMS (SBN 274008)
jwilliams@wfslaw.com
BRANDON R. PARRISH (admitted *pro hac vice*)
bparrish@wfslaw.com
**WARGO, FRENCH & SINGER LLP**
515 S. Flower St., 18th Floor
Los Angeles, California 90071
Tel: (310) 853-6300
Fax: (310) 853-6333

Attorneys for Defendants and Counterclaimants Wingpow International Limited, Gary Ayckbourn, and Mark Ayckbourn

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Line One Laboratories Inc. (USA), a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Wingpow International Limited, a private limited company organized in the United Kingdom; Gary Ayckbourn, an individual; Mark James Ayckbourn, an individual; and DOES 1-10, inclusive,<br><br>Defendants.<br><br>And related counterclaims. | Case No. 2:22-cv-02401-RAO<br><br>**COUNTERCLAIMANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER CHARGING MEMBERSHIP INTERESTS OF JUDGMENT DEBTOR IN LIMITED LIABILITY COMPANIES (AMERICAN LATEX, LLC & LINE ONE LABORATORIES, LLC)**<br><br>Date: June 18, 2025<br>Time: 10:00am<br>Courtroom: 590<br><br>Hon. Rozella A. Oliver |

**REPLY ISO MOTION FOR CHARGING ORDER**

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. Because Judgment Debtor Has Not Yet Posted a Bond, Nor Has One Been Approved by the Court, Rule 62(b) is Inapplicable. ............. 2

    B. There is Substantial, Uncontroverted Evidence of Judgment Debtor's Membership Interests in Line One and American Latex. ........ 4

    C. The Court's Prior Ruling Has No Bearing on this Motion. .................. 10

III. CONCLUSION ............................................................................................. 11

## I. INTRODUCTION

Far from establishing any reason why Counterclaimants should not be permitted to charge the membership interests in American Latex and Line One to collect on Judgment Debtor's $6.9 million debt to Counterclaimants, Judgment Debtor's Opposition to the instant Motion only confirms the need for a charging order *and* appointment of a receiver. Judgment Debtor raises three arguments. None were raised in the pre-filing meet and confer, and they are all without merit.

First, Judgment Debtor states he belatedly began efforts to seek a bond for a stay of execution on the same date Counterclaimants filed the Motion. But there is no evidence he will be successful in doing so. Indeed, he still has not even obtained the agreement of a surety to *provide* a bond, much less moved the Court to approve the bond, which negates any application of the stay of execution in Rule 62(b).

Second, contrary to his unambiguous—yet apparently perjurious—testimony at trial, Judgment Debtor contends for the first time that he conveyed his LLC membership interests to a family trust (for which he serves as the trustee) immediately prior to trial. This new allegation directly contradicts his trial testimony and is barred under the doctrine of judicial estoppel, also known as the doctrine of preclusion of inconsistent positions. Judgment Debtor also cannot controvert sworn testimony at trial via a mere declaration of counsel, where counsel lacks personal knowledge of the matters at issue and fails to authenticate the documents purporting to prove the transfer of the membership interests. In any event, whether the membership interests are legally held in Judgment Debtor's own name or as trustee for his family trust, there is nothing preventing the Court from entering an order that any payments or distributions from the LLCs to Judgment Debtor should be charged and sent to Counterclaimants instead. There also is nothing preventing the Court from appointing a receiver to oversee distributions pursuant to the charging order, given Judgment Debtor's repeated perjury and obvious efforts to hide assets to preclude collection. To the contrary, Judgment Debtor's bad-faith efforts to hide his assets *compel* the appointment of a receiver.

Third, Judgment Debtor claims that the Court's prior denial of Counterclaimants' requests for a receiver and to find that the LLCs are his alter egos bars this Motion. But the Court's prior order expressly left open the possibility—and even likelihood—that a receiver could be appointed if Judgment Debtor continued to hide assets. And Judgment Debtor's point regarding the alter ego finding misses the mark. An alter ego finding would have permitted collection against the LLCs, while this Motion seeks collection against Judgment Debtor himself and has nothing to do with whether the LLCs are alter egos (or even were parties to this case at all). The Court's prior ruling has no bearing on the instant Motion. The Court should therefore grant the Motion.

## II.   ARGUMENT

### A.   Because Judgment Debtor Has Not Yet Posted a Bond, Nor Has One Been Approved by the Court, Rule 62(b) is Inapplicable.

Although Judgment Debtor seeks to hide behind the stay provisions of Rule 62(b), his argument concedes that a stay under Rule 62(b) has not taken effect. Under Rule 62(b), a party may be entitled to stay the enforcement of a money judgment—*provided that* the party seeking the stay has posted a bond and the Court has approved it. *See Abbywho, Inc. v. Interscope Records*, Case No. CV 06–06724 MMM (JTLx), 2008 WL 11406049, at *2 (C.D. Cal. Aug. 25, 2008) ("When a monetary judgment is involved, one gets a stay by posting a bond."); *Sarver v. Hurt Locker LLC*, Case No. 2:10-cv-09034-JHN-JCx, 2012 WL 12892147 at *2 (C.D. Cal. Feb. 2, 2012) (stating that "a request for a stay of a money judgment pending appeal is governed by Rule 62(d) [now in modified form Rule 62(b)], which provides for a stay of execution upon posting of a supersedeas bond."). Specifically, Rule 62(b) states that: "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. *The stay takes effect when the court approves the bond or other security* and remains in effect for the time specified in the bond or other security." *See* Fed. R. Civ. P. 62(b) (emphasis added).

Here, the Opposition plainly demonstrates that Judgment Debtor has not posted a bond that has been approved by the Court. *See* Dkt. 320 at 4:11-17; *see also* Dkt. 320-1 at ¶ 2. Instead, he merely claims that he has *applied* for a bond, and notably, did not even take advantage of the thirty-day automatic stay of execution specifically allotted to him for this purpose. Fed. R. Civ. P. 62(a). To be clear, Counterclaimants waited for that thirty-day period to expire on May 18, 2025, then filed this Motion on May 21, 2025. Judgment Debtor did *nothing* during the thirty-day automatic stay and only allegedly filed for a bond "reflecting the entire amount of the judgment at issue"[1] the same date that this Motion was filed. Dkt. 320 at 4:15-17. Having failed to take advantage of the time allotted him to seek a bond, and only belatedly applying for one after Counterclaimants began collection efforts, he cannot now argue that collection should halt because he is merely in the process of seeking a bond.

Indeed, there is no evidence before the Court that there is any likelihood a surety will even agree to provide a nearly ten-million-dollar bond on Judgment Debtor's behalf. *See supra* n.1. His counsel has averred with no foundation and no supporting facts that Judgment Debtor "is presently completing the final steps necessary to secure said bond," Dkt. 320 at 4:15-17, but notably, counsel also represented to Counterclaimants in a telephone call on June 3, 2025 that it would be at least two additional weeks before Judgment Debtor would even have a *decision* from the surety. Again, Judgment Debtor also must obtain a Court order approving the bond before any stay would go into effect, meaning that Judgment Debtor's request for relief from

---

[1] Notably, posting of a bond in the amount of $6,900,000.00, "the entire amount of the judgment", would be insufficient. Because a bond is intended to cover the judgment and interests, costs, and damage for delay, "a bond of 1.25 to 1.5 times the judgment is typically required." *KST Data, Inc. v. DXC Tech. Co.,* No. 2:17-CV-07927-SJO-SK, 2020 WL 2841402, at *1 (C.D. Cal. Mar. 20, 2020); *see also Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027-29 (N.D. Cal. 2012) ("The amount of the bond [under Rule 62(b)] should be sufficient to pay the judgment plus interest, costs and any other relief (e.g. attorney fees) the appellate court may award [and] a bond of 1.25 to 1.5 times the judgment is typically required.").

collection efforts is predicated on a number of hypothetical future events that may never occur. *See Ascher v Gutierrez*, 66 F.R.D. 548, 549 (D.D.C. 1975) (noting that a stay under Rule 62(d), now in modified form in Rule 62(b), takes effect upon the court's approval of the bond). Therefore, Judgment Debtor's contention that Rule 62(b) stays execution of Counterclaimants' collection efforts is without merit and a charging order may be properly issued by this Court.

### B. There is Substantial, Uncontroverted Evidence of Judgment Debtor's Membership Interests in Line One and American Latex.

Judgment Debtor's arguments against his own sworn testimony at trial fare even worse. In the Motion, Counterclaimants showed that a charging order would be proper because Judgment Debtor clearly testified under the penalty of perjury at trial that he was the owner of American Latex and Line One. Dkt. 314-3. Counterclaimants also presented public filings showing that Judgment Debtor had converted American Latex and Line One from S-corporations to LLCs four months *before* trial—albeit without disclosing this to the Court or Counterclaimants, moving to substitute the LLCs as parties even after Counterclaimants requested the same, or supplementing his required corporate document production. Dkt. 314-2; *see also* Dkt. 269 at 11 (supplemental brief of Counterclaimants bringing the conversion to the Court's attention). Thus, the Motion established that a charging order over Judgment Debtor's LLC membership interests in American Latex and Line One would be more than proper.

Shockingly, Judgment Debtor's Opposition now alleges that he engaged in a *second* undisclosed conveyance—purportedly assigning the LLC interests to himself, as trustee of the Lee Family Trust, a mere two weeks prior to trial—and argues that the Motion must fail because Counterclaimants "have failed to even mention . . . the Lee Family Trust." Dkt. 320 at 5-6. But this is the ***first time*** Judgment Debtor has ever identified such an alleged pre-trial conveyance or the Lee Family Trust. Not only did his counsel fail to do so when meeting and conferring about this Motion, the alleged

conveyance directly contravenes his sworn testimony at trial, which was attached to the Motion and indicated at that time he *currently* owned 100% of both companies:

> Q: Mr. Lee, you *own* 100 percent of Line One and American Latex, correct?
>
> A: Correct.
>
> Q: And you fully *control* both of those entities?
>
> A: Under the regulation of the government, correct.
>
> Q: And you and your wife are the two directors of both Line One and American Latex, correct?
>
> A: My wife, she's not a director.
>
> Q: Okay. So is it only you that *is* a director?
>
> A: Correct.
>
> Q: Of both entities, correct?
>
> A: Correct.
>
> Q: Neither of those two companies holds annual board meetings, does it?
>
> A: *Given my 100 percent control of both entities*, there has never been a need to hold annual meetings. I mean, how can I talk to myself? And on the articles of incorporation, it's stated that there is no need to hold such meetings.

Dkt. 314-3, Trial Tr. 745:2-20 (emphasis added).

As a result, if Judgment Debtor's new allegation is true, it is an explicit admission that he perjured himself at trial when testifying he currently owned and fully controlled American Latex and Line One.[2] In a transparent attempt to avoid this, he speciously argues that Counterclaimants have mischaracterized his testimony, that he was "focused on the *prior* status of American Latex and Line One as California corporations," and he was "*previously* the '100 percent shareholder'" of Line One and

---

[2] This is now the *second* instance in which the post-trial proceedings have revealed that Judgment Debtor perjured himself at trial. *See* Dkt. 276 at 2-4 (describing Judgment Debtor's perjurious testimony that he owned three pieces of real property in the County of Los Angeles, despite knowing at the time he no longer owned them, as he had transferred them to various LLCs and trusts to hide assets and avoid collection).

American Latex." Dkt. 320 at 5 (emphasis added). The trial testimony, however, speaks for itself. All the questions asked of Judgment Debtor regarding his ownership of Line One and American Latex were in the present tense—not past tense—and there is nothing to support his blatant mischaracterization of the record. *See* Dkt. 314-3. His citations to later portions of the transcript do not help his case, either. In fact, they only confirm his unambiguous testimony that he continued to directly own 100% of the S-corporation shares in American Latex and Line One at the time of trial (of course, he had not disclosed at this point that he had converted the corporations to LLCs, and in hindsight clearly was misrepresenting that fact as well):

> Q: And have you ever heard the term "S corporation"?
>
> A: My entities *are* S corps, so of course I'm aware of that.
>
> Q: What is your understanding of the obligation to keep minutes of meetings with respect to S corporations?
>
> A: Due to its nature being an S corporation and *I'm the 100 percent shareholder of Line One Laboratory and American Latex*, there is no need for meetings and whatever because all of the incomes of those two entities will go into my personal income and I will be taxable on that.

*See* Ex. 4, Trial Tr. at 770:2-10 (emphasis added).

Put simply, the idea that Judgment Debtor was only testifying that he "previously" held interests in American Latex and Line One finds no support in the record at all. It is an absolute fabrication. Thus, Judgment Debtor's new so-called "evidence" of a pre-trial assignment of the LLC membership interests to the Lee Family Trust directly contravenes Judgment Debtor's trial testimony and should be afforded no weight whatsoever under the doctrine of judicial estoppel. *See Wagner v. Pro. Eng'rs in California Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant

from playing fast and loose with the courts.") (internal citations omitted); *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) ("[J]udicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion.").

Judgment Debtor also cannot rely on this new evidence because it is not admissible. Rather than proffer a declaration by Judgment Debtor himself, *counsel* has submitted a declaration attaching—with no foundation—purported "Assignment of Membership Interest" and "Consent to Action in Lieu of Special Meeting of the Member and Manager" documents that allegedly show Judgment Debtor's transfer of all of his LLC membership interests to himself, as trustee of the Lee Family Trust, on October 14, 2024, two weeks before trial. Dkts. 320-1, 320-2, 320-3. Counsel's declaration is incapable of authenticating these purported documents. *See Kama v. Wolf*, Case No. 20-cv-10265, 2022 WL 18284879, at *3 (C.D. Cal. Dec. 5, 2022) ("A declaration of counsel, who does not have personal knowledge of the authenticity of the record, cannot serve to authenticate it."); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) ("Exhibit Q was not [properly] authenticated because Orr introduced the letter by attaching it to [counsel's] affidavit [and counsel] lacks personal knowledge of the letter.").

Indeed, aside from a wholly-conclusory assertion that counsel has personal knowledge of the matters described in the affidavit, there is nothing in the declaration to suggest that counsel has any ability to authenticate these documents by personal knowledge of their execution. *See Kama*, 2022 WL 18284879, at *3 (attorney can only authenticate a document the attorney prepared, signed, or witnessed being signed). This is, of course, unsurprising because the documents purportedly date back to a period in October 2024 that was over *four months* before counsel even entered an appearance for Judgment Debtor. Because counsel has not provided any foundation for his conclusory statement of personal knowledge, the attached documents are plainly inadmissible.

1	In any case, even assuming *arguendo* that Judgment Debtor had not violated
2	precepts of judicial estoppel by taking entirely inconsistent positions on this issue (and
3	hiding the truth from Counterclaimants at every turn), **and** even assuming *arguendo*
4	that the documents attached to counsel's declaration were admissible, the Motion still
5	should be granted. Whether the LLC membership interests of American Latex and Line
6	One are owned by Judgment Debtor in his individual capacity versus his capacity as
7	the trustee of the Lee Family Trust ultimately is immaterial. There is no dispute that
8	Judgment Debtor: (i) is a party to the proceedings; and (ii) has been served with the
9	Motion. That is all that is required to charge the LLC membership interests and create
10	a lien. Cal. Civ. Proc. Code § 708.320. That lien "requires the limited liability company
11	to pay over to the person to which the charging order was issued any distribution that
12	would otherwise be paid to the judgment debtor." Cal. Corp. Code § 17705.03(a).

13	It should not be the subject of any particular dispute that if Judgment Debtor is
14	to receive money or other distribution from American Latex or Line One, that money
15	should first go to satisfy the Judgment rather than for Judgment Debtor's personal
16	enjoyment, regardless of whether the LLC interests are held in the name of Budiman
17	Lee or "Budi Man, as trustee of the Lee Family Trust dated August 19, 2024."
18	Certainly, Judgment Debtor's purported transfer of his LLC interests into a trust for
19	which he serves as trustee would not prevent him from taking money or distributions
20	from American Latex or Line One. He still controls the companies. Thus, a charging
21	order is still relevant and necessary to accomplish the rather obvious goal of preventing
22	Judgment Debtor from looting the companies without satisfying the Judgment against
23	him, and the order should issue.

24	Finally, the Court also should appoint a receiver as authorized by the charging
25	order statute. Judgment Debtor's efforts with respect to the alleged transfer of his LLC
26	membership interests to a trust continue to evidence the same pattern and scheme of
27	hiding assets that Counterclaimants have brought to the Court's attention on numerous
28	occasions. *See, e.g.,* Dkt. 269 (post-trial brief showing that Judgment Debtor had

**REPLY ISO MOTION FOR CHARGING ORDER**

1 misappropriated partnership assets and intellectual property, fraudulently transferred his real estate holdings, retained an "asset protection" firm to prevent Counterclaimants from collecting on any judgment, and hired a bankruptcy attorney to call Counterclaimants and assert that they would see no money for two years post-judgment); 271 (application for writ of attachment seeking to halt Judgment Debtor from further hiding assets); 289 (reply brief on same application, rebutting Judgment Debtor's disingenuous description of his so-called "tax planning" efforts); 291 (response to Counterdefendants' post-trial brief describing Judgment Debtor's efforts to hide assets and that these efforts, among other things, should require a receiver to be appointed on the accounting counterclaim).

These efforts, combined with Judgment Debtor's new disclosure that he at least has attempted to prevent collection by transferring his LLC interests to a trust, create even more reason to appoint a receiver.  *See* Cal. Corp. Code § 17705.03(b)(1)-(2) (providing that the court may also "appoint a receiver of the distribution subject to the charging order").  Contrary to Judgment Debtor's arguments, Counterclaimants do not need to provide evidence that he "lacks the ability to personally satisfy the Judgment" for the appointment of a receiver.  Dkt. 320 at 2-5.  Instead, the appointment of a receiver is proper where there is the threat that property may be hidden, or the operator of an LLC may be unwilling to act in good faith with the charging order.  *N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 293 (E.D. Cal. 1991); *U.S. v. Alisal Water Corp.*, 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002).  Judgment Debtor's scheme to hide assets from collection clearly shows that he will not be deterred by a mere charging order against the LLC membership interests, particularly when he still controls the LLCs and can just transfer money directly out of the LLC's accounts or receive payments due to the LLC without disclosing *anything* to Counterclaimants.  A receiver is necessary to prevent the sort of malicious and bad-faith conduct Judgment Debtor has exhibited at every turn.  A receiver should be appointed.

**REPLY ISO MOTION FOR CHARGING ORDER**

### C. The Court's Prior Ruling Has No Bearing on this Motion.

Judgment Debtor's final last-ditch effort to prevent Counterclaimants from collecting on the Judgment is another attempt at misdirection. Counterclaimants are not trying to "circumvent" the Court's prior order, Dkt. 300, denying a receiver and alter ego finding. Dkt. 320 at 7-8. The Court expressly denied the request for a receiver *at that time* because "appointment of a special master to investigate any fraudulent steps Lee has taken to avoid collection . . . would sidestep post-judgment procedures for execution and collection on judgments." Dkt. 300 at 6-7. Now, the Court is directly involved in those post-judgment procedures, and the Court expressly left the door open for Counterclaimants to seek this relief. *See id.* at 7 ("Wingpow has not shown that Lee would be uncooperative during post-judgment discovery to warrant the appointment of a special master *at this time*. To the extent Lee has made fraudulent transfers of his assets to avoid payment on the anticipated judgment, Counterclaimants may address these through the applicable post-judgment procedures.") (emphasis added).[3]

And the alter ego issue has no relevance at all in this context. To be clear, if the Court had granted an alter ego finding, there would be no need for Counterclaimants to seek a charging order at all—Counterclaimants would simply collect directly against the LLCs' assets. The charging order, by definition, is an attempt to collect against *Judgment Debtor*. And Counterclaimants have a statutory right to collect against Judgment Debtor, including LLC membership interests, whether those LLCs were or were not parties to the litigation or Judgment Debtor's alter egos. *See* Fed. R. Civ. P. 69; Cal. Code Civ. Proc. §§ 680.010 *et seq.,* § 708.310 and § 708.320; Cal. Corp. Code § 17705.03(a); *Crocker Nat. Bank v. Perroton*, 208 Cal. App. 3d 1, 6 (1989) ("Therefore, a judgment creditor must seek a charging order to reach the debtor

---

[3] Notably, Counterclaimants observe that Judgment Debtor was required to respond to substantial post-judgment discovery on June 2, 2025 but submitted virtually nothing but boilerplate objections. Counterclaimants are beginning the motion to compel process under L.R. 37-1.

partner's [or member's] interest in the partnership [or LLC]."). Thus, the Court's prior ruling does not in any way preclude the relief sought here.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Counterclaimants' Motion for Charging Order, issue an Order charging the LLC membership interests in Line One and American Latex, and appoint a receiver to give effect to the charging order; or in the alternative, requiring Judgment Debtor to produce all K-1 forms and records of distributions, and devise and implement an auditing system to ensure compliance with the charging order.

Dated:  June 4, 2025                    **WARGO, FRENCH & SINGER LLP**

By:  */s/ Jeff Williams*
DAVID M. PERNINI
JEFFREY N. WILLIAMS
BRANDON R. PARRISH

Attorneys for Defendants/Counterclaimants Wingpow International Ltd., Gary Ayckbourn, and Mark Ayckbourn